[No. 6100.]

# W. J. HESTHAL *v.* W. T. MYLES.

<table>
<tr><td>53</td><td>623</td></tr>
<tr><td>114</td><td>294</td></tr>
<tr><td>53</td><td>625</td></tr>
<tr><td>123</td><td>177</td></tr>
<tr><td>53</td><td>623</td></tr>
<tr><td>f126</td><td>559</td></tr>
</table>

PERSONAL PROPERTY—CHANGE OF POSSESSION—A constable having attached certain personal property, an action for its recovery was brought against the officer by one claiming the property as a purchaser from the defendant in the attachment proceedings. The District Judge charged the jury that, if the property was delivered to plaintiff, and was under his control from the date of the alleged purchase to the levy of the attachment, a period of six days, the sale was valid as against the attaching creditor: *held*, in view of the facts in evidence, that the question of actual and continued change of possession should have been submitted to the jury.

APPEAL from the District Court of the Third Judicial District.

Judgment was rendered for the plaintiff, and the defendant appealed. The other facts are stated in the opinion.

*Wiggin & Eells*, for Appellant, cited *Hurlburd* v. *Bogardus*, 10 Cal. 519; *Stevens* v. *Irwin*, 15 Cal. 503; *Godchaux* v. *Mulford*, 26 Cal. 316; *Lay* v. *Neville*, 25 Cal. 552; *Regli* v. *McClure*, 47 Cal. 612; *Gray* v. *Corey*, 48 Cal. 209.)

*Voorhies & Brearty*, for Respondent.

By the COURT:

The following is the statement presented to this Court by the respondent:

"This action was brought to recover possession of certain property described in the complaint, or its value, from the defendant, who was Constable of Oakland Township, and who levied upon and took into his possession the property therein described in the suit entitled '*S. M. Barrows* v. *R. H. Gans.*' It appears from the evidence that Gans was the owner of a certain billiard parlor and saloon in the City of Oakland; that he had in his employ one August Hesthal, son of the plaintiff, and one John Salino, as bar-keepers; that on the 16th of June, A. D. 1877, Gans was indebted to the plaintiff in the sum of one thousand one hundred and ninety-five dollars, for money loaned at different times before that date, for which amount plaintiff held four promissory notes by Gans, in the respective sums following: One for six hundred and fifty-five dollars, dated March 15th, 1877; one for three hundred and fifty dollars, dated April 14th; one for ninety dollars, dated May 19th; one for one hundred dollars, dated May 20th. On the date first before mentioned, plaintiff demanded payment of the above sums from Gans, but Gans was unable to pay; then plaintiff demanded a bill of sale of the place, which Gans agreed to give if plaintiff would surrender the notes and pay him the further sum of one hundred and five dollars, making in all the sum of one thousand three hundred dollars. Whereupon plaintiff paid the one hundred and five dollars and delivered the notes to Gans, who delivered the property described in the complaint, and executed a bill of sale thereof to plaintiff, and called his bar-keeper, Salino, and introduced him to plaintiff, saying: 'This is the new proprietor'; that on the 22nd of June, A. D. 1877, in the suit of *Barrows* v. *Gans*, the defendant took the said property, and subsequently sold the same under writ of execution."

The Court below charged the jury: "Now if you find from

the evidence in the case that possession of the property was delivered to the plaintiff on the execution and delivery of the bill of sale, and that the property was under the personal control of the plaintiff, either by himself or by his son and bar-keeper, from the 16th of June until the 22nd of June, when it was taken by defendant under attachment against Gans, as matter of law I say to you that constituted an actual and continued change of possession, and the sale would be valid as against the creditors of Gans, although the bar-keeper of Gans may have continued in charge of the property in the saloon under plaintiff in this case."

The statute provides that every transfer of personal property " is conclusively presumed " to be fraudulent and void as against those who are creditors of the transferrer while he remains in possession, if it be not accompanied by an immediate delivery and followed by an actual and continued change of possession. (Civil Code, sec. 3440.)

In addition to the above statement of respondent, the case shows that the two bar-keepers, August Hesthal and John Salino, continued their vocation after as they had pursued it prior to the 16th of June; that Gans visited the saloon occasionally after that date, while it does not appear that his attendance had previously been constant. Plaintiff seems never to have given his personal attention to the business; for aught that we find in the transcript it was apparently conducted in the same place, in the same manner, and by the same persons after as before the execution of the bill of sale.

The charge was erroneous, because it directed the attention of the jury to a single circumstance as conclusive of the question of actual and continued change of possession, while that circumstance might have existed and yet the jury been justified in finding no such change.

In cases of sales or transfers of personal property, the property may, after delivery, remain *under the control* of the vendee, and still the change of the possession be neither actual nor continuous as against creditors.

It was said by Mr. Justice BALDWIN, in *Stevens* v. *Irwin*, 15 Cal. 503: "The delivery must be made of the property; the

vendee must take the actual possession ; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. *It must be such as to give evidence to the world of the claims of the new owner.* He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous—not taken to be surrendered back again —not formal, but substantial. But it need not necessarily continue indefinitely, when it is *bona fide* and *openly* taken, and is kept for such a *length of time* as to give general *advertisement of the status of the property* and *the claim to it by the vendee.*"

Since the decision in *Stevens* v. *Irwin*, this Court has repeatedly held that, to constitute such change of possession as to make the transfer valid against creditors of the vendor, there must be such change of the *apparent custody* of the property as to put one dealing with the vendor, with respect to it, upon inquiry, or such at least as might suggest a change of ownership. And without accepting, in its fullest sense, the language employed by the learned Judge in *Stevens* v. *Irwin*, we may add that we have been referred to no case which excludes from consideration the circumstance of an advertisement of the vendee's claim, such as would enable an ordinarily prudent man to ascertain that he could no longer rely upon his knowledge of the ownership of the former proprietor. The instruction, in effect, informed the jury that if the vendee had assumed the *control* of the property in such manner as that the vendor could not legally interfere with it, there was an actual and continued change of possession—even though the transaction was entirely wanting in the publicity, openness, or notoriety which would tend to warn the other members of the community, or advertise the claim of the vendee. Whether the possession is actual and continued, as against a creditor, must ordinarily be determined by the jury; but in no case can the *mere* fact that the vendee has control of the property be conclusive that the change has become actual and continued as against creditors.

Judgment and order reversed, as of the day of the submission of the cause, and cause remanded for a new trial.